**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Serge Eric Bayard

    v.                                          Civil No. 11-cv-598-SM

Christopher Currier et al.[1]


**REPORT AND RECOMMENDATION**


    Serge Eric Bayard, a federal prisoner in Pennsylvania, has

filed a complaint (doc. no. 1), asserting that private citizens

conspired with state actors to have Bayard arrested, without

probable cause, and maliciously prosecuted for trespassing.

Bayard has also asserted that when he was detained at the

Merrimack County House of Corrections ("MCHC"), in connection

with the trespass prosecution, and thereafter in connection with

a related federal case, he was subjected to strip searches and

visual body cavity inspections in violation of his Fourth and

Fourteenth Amendment rights.  The complaint (doc. no. 1) is

before the court for preliminary review to determine if Bayard's

_____

    [1]Defendants are the Town of New London, New Hampshire; New
London Police Department ("NLPD") Chief David Seastrand; NLPD
Officers Christopher Currier and David White; Assistant
Merrimack County Attorney Ashlie Hooper; Merrimack County;
Attorney Arthur Perkins; Mark Shovan; Rebecca Shovan; and Lydia
Shovan-Palermo.

federal civil rights claims and related state tort claims should
be dismissed, amended, or served upon defendants.  See 28 U.S.C.
§ 1915A; United States District Court, District of New Hampshire
Local Rule ("LR") 4.3(d)(2) (inmate complaints forwarded to
magistrate judge for preliminary review).

### Preliminary Review Standard

The magistrate judge conducts a preliminary review of all
inmate complaints.  See 28 U.S.C. § 1915A(a); LR 4.3(d)(2).  The
magistrate judge may direct service of the complaint, or, as
appropriate, recommend to the district judge that one or more
claims be dismissed if: the court lacks subject matter
jurisdiction, a defendant is immune from the relief sought, the
complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See 28 U.S.C. §§ 1915(e)(2) and
1915A(b); LR 4.3(d)(2).

In determining whether such a complaint states a claim, the
court must construe the complaint liberally.  See Erickson v.
Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive
preliminary review, the complaint must contain "sufficient
factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'"  See Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550
U.S. 544, 570 (2007)); <u>Sepúlveda-Villarini v. Dep't of Educ.</u>,
628 F.3d 25, 29 (1st Cir. 2010).

**Background**

I.   <u>Estate Proceedings</u>

For several years, Bayard lived with an elderly friend,
Dorothy Shovan ("Dorothy"), in New London, New Hampshire.
Bayard alleges that Dorothy's son, Mark Shovan ("Mark"), left
Bayard in charge of caring for his mother until she died, and
that Bayard was named as a beneficiary in Dorothy's will.

Bayard asserts that after Dorothy died, in July 2008, the
estate's co-executors (Mark, his wife Rebecca, and their
daughter Lydia), through counsel, Attorney Perkins, told Bayard
that his right to stay in the home had expired, and that the
house was going to be sold.  In response, Bayard filed a claim
against the estate and sought to preserve his right to stay in
the house.  Attorney Perkins pursued legal action to evict him.

On October 31, 2008, after Bayard had failed to appear at a
hearing, the probate court issued a default judgment and a writ
of possession directing the New London Police Department
("NLPD") and the Merrimack County Sheriff's Department to evict

Bayard.[2]  Bayard alleges that Attorney Perkins failed to have him served with the writ.

II.  <u>Search Warrant</u>

On January 6, 2009, NLPD officers executed a search warrant at a location where Bayard was storing some of his possessions. The police procured the warrant to obtain evidence in their investigation of crimes alleged to have been perpetrated by Bayard against Dorothy and the estate.  A copy of the writ of possession issued in October 2008 was attached to the warrant.

---

[2]Bayard filed the writ of possession as an exhibit to a habeas corpus petition filed in this court, <u>see</u> <u>Bayard v. Hufford</u>, No. 10-cv-442-SM (doc. no. 1-4), and the court takes judicial notice of that filing in connection with its preliminary review of the complaint.  <u>See</u> <u>United States v. Pelletier</u>, 469 F.3d 194, 203 (1st Cir. 2006) (court may take judicial notice of its own records (citing Fed. R. Evid. 201)). The writ states, in pertinent part:

> TO ANY SHERIFF OF MERRIMACK COUNTY AND/OR POLICE OFFICER OF THE TOWN OF NEW LONDON.  You are hereby ordered to evict and remove [Bayard] from the Premises . . . immediately, using such efforts and methods as you deem best, including such force as may be necessary to remove [Bayard] from the Premises.
> . . . .

<u>In re Dorothy Shovan Trust</u>, No. 2008-0687 (N.H. Prob. Ct., Merrimack Cnty., Oct. 31, 2008).

III. <u>Arrest and State Prosecution</u>

Several days after the search warrant was executed, on January 10, 2009, Bayard entered Dorothy's home.  The police were tipped to his presence and arrested him at the scene without a warrant.  NLPD Officer Currier advised Bayard that he would be charged with trespassing in violation of the writ of possession.  Bayard was arraigned on January 12, 2009, and bail was set at $500 cash.  Bayard remained incarcerated at the MCHC, unable to post bail.  On February 18, 2009, Bayard was served with a misdemeanor trespass complaint.  The complaint, based on facts sworn by NLPD Officer White, charged that Bayard, on January 10, 2009, had entered the house knowing he lacked license or privilege to do so, in defiance of the writ, in violation of N.H. Rev. Stat. Ann. ("RSA") §§ 635:2, I, and III(b)(3).  Bayard moved pretrial to dismiss the charge, and that motion was denied on May 19, 2009.

On June 2, 2009, the state filed a second misdemeanor trespass charge, alleging that on January 10, 2009, Bayard had trespassed in an "occupied structure" -- the house -- in violation of RSA § 635:2, III(a).  The state court granted the state's motion to have the two trespassing charges asserted in the alternative and joined for trial.

On August 5, 2009, the second day of Bayard's trial, the
court, on Bayard's motion, dismissed the original charge,
finding that the writ of possession was not a restraining order
as required for conviction under the relevant criminal statute.
The jury convicted Bayard of the remaining trespass charge.
Bayard was sentenced to time served and was released from
custody on August 5, 2009.  The New Hampshire Supreme Court
affirmed Bayard's conviction.  See State v. Bayard, No. 2009-
0631 (N.H. Sept. 14, 2010).

IV.  Federal Prosecution

On August 6, 2009, Bayard was arraigned in federal court on
two counts relating to his misuse of Dorothy's credit cards.
See United States v. Bayard, 642 F.3d 59, 60 (1st Cir.)
(affirming conviction in United States v. Bayard, No. 09-CR-
0096-SM (D.N.H. Oct. 2009)), cert. denied, 131 S. Ct. 2944
(2011).  Bayard was convicted in federal court, and that
conviction has been upheld.  See id.  Bayard remained at MCHC in
federal custody until February 2010, when he was transferred to
a different facility.

V.  MCHC Strip Searches

While at the MCHC, from January 2009 until February 2010,
Bayard asserts that he was subjected to a number of strip

searches and visual body cavity inspections.  The searches at

issue include a search occurring at his initial booking at the

MCHC on January 10, 2009, a search occurring when he returned to

the MCHC from federal court on August 6, 2009, and recurrent

"routine" strip searches and visual body cavity inspections

conducted pursuant to MCHC policy.  Bayard alleges that he was

subjected to such strip searches and visual body cavity

inspections more than forty times.  Bayard asserts that none of

the challenged searches were based on any individualized or

particular suspicion that he harbored contraband.  During each

of the searches and inspections, Bayard was required to strip,

squat, and lift his genitals to allow visual inspection of his

anus and the area behind his penis and testicles.


**Claims**

Construing the complaint (doc. no. 1) liberally, the court

finds that Bayard has asserted the following claims for relief:

1.    The NLPD defendants violated Bayard's Fourth
and Fourteenth Amendment[3] rights by: (a) arresting Bayard
without probable cause; (b) using false information to

---

[3]Bayard refers to the Fifth Amendment due process clause in
the complaint.  The court has construed the references to due
process as intending to invoke the co-extensive protections of
the Fourteenth Amendment.  Any claim based on a violation of the
Fifth Amendment should be dismissed from this case, as no
defendant is alleged to have acted as a federal agent.

arrest Bayard; and (c) using false information to instigate a malicious prosecution.

    2.   NLPD Officer Currier, in conspiracy with Mark Shovan and Attorney Perkins, violated Bayard's Eighth Amendment right not to be subjected to excessive bail.

    3.   NLPD Chief David Seastrand violated Bayard's Fourth and Fourteenth Amendment rights by failing to prevent officers from falsely arresting Bayard without probable cause, on a charge that Seastrand knew or should have known was false; and approving the use of false information to obtain Bayard's arrest.

    4.   Assistant Merrimack County Attorney Ashlie Hooper violated Bayard's Fourth and Fourteenth Amendment rights by: (a) causing Bayard's detention on a charge that she knew or should have known was false; and (b) proceeding with a malicious prosecution based upon false information and a false charge.

    5.   The private party defendants (Attorney Perkins, Mark and Rebecca Shovan, and Lydia Shovan-Palermo) violated Bayard's Fourth, Eighth, and Fourteenth Amendment rights by: (a) instigating the false arrest of Bayard, based on a charge that they knew was false, and by causing the submission of false information leading to Bayard's arrest; (b) conspiring with Officer Currier to deprive Bayard of the opportunity to post bail; and (c) instigating a malicious prosecution based on false information and a false charge of criminal trespass.

    6.   All defendants are liable for conspiring with one another to violate Bayard's federal rights.

    7.   The Town of New London is liable, under 42 U.S.C. § 1983, for: (a) the conduct of its police officers who violated Bayard's federal rights; (b) failing adequately to train or supervise the police defendants to avoid violating Bayard's federal rights.

    8.   Merrimack County is liable, under 42 U.S.C. § 1983, for: (a) the conduct of County employees who violated Bayard's federal rights, including their conduct in subjecting Bayard to routine, policy-driven, recurrent

strip searches and visible body cavity inspections at MCHC,
undertaken outside of the context of contact visits and
booking procedures; (b) failing adequately to train or
supervise the County defendants to avoid violating Bayard's
federal rights; (c) condoning its prosecutors' custom of
prosecuting cases based on false information or false
charges; and (d) promulgating the strip search and visual
body cavity search policy that was applied to Bayard.

     9.    All defendants are jointly and severally liable
to Bayard, under the common law, for: (a) false arrest; (b)
false imprisonment; (c) malicious prosecution; (d) abuse of
legal process, to achieve the arrest and imprisonment of
Bayard; (e) a civil conspiracy, to achieve the arrest and
imprisonment of Bayard; (f) intentional infliction of
emotional distress; (g) negligence; and (h) gross
negligence.

Bayard has sued the Town and County agent defendants in their

individual and official capacities.  He seeks damages in the

amount of $440 million.

**Discussion**

I.  <u>Prosecutorial Immunity</u>

Bayard has named Assistant Merrimack County Attorney Ashlie

Hooper, the state court prosecutor, as a defendant here.

Prosecutors are entitled to absolute immunity from claims

arising out of their "prosecutorial actions that are 'intimately

associated with the judicial phase of the criminal process.'"

<u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 341 (2009) (quoting

<u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976)); <u>accord</u> <u>Belcher v.</u>

<u>Paine</u>, 136 N.H. 137, 148, 612 A.2d 1318, 1325-26 (1992)).

Attorney Hooper's involvement in the case began after Bayard was arraigned.  The acts at issue alleged to form the basis for Bayard's claims against Attorney Hooper were her discretionary decisions to bring a new charge and to join that new charge with a pending charge, asserted in the alternative, without acquiescing in or seeking the dismissal of the pending charge.  All of the acts alleged to be improper or illegal fall squarely within the scope of Attorney Hooper's prosecutorial functions conducted during "the judicial phase of the criminal process," rendering her absolutely immune from civil liability.  Accordingly, the court should dismiss all claims asserted against Attorney Hooper, and she should be dismissed from this case.  See generally Kalina v. Fletcher, 522 U.S. 118, 124-28 (1997); accord Belcher, 136 N.H. at 148, 612 A.2d at 1325-26.

## II.  Claims under 42 U.S.C. § 1985

Bayard cites 42 U.S.C. § 1985 as a statute providing a federal cause of action for his claims.  The court construes the complaint as intending to assert that defendants are liable for a conspiracy actionable under either subsection 1985(2) or 1985(3) of Title 42.  To so proceed, however, Bayard must allege facts showing a racial or class-based discriminatory animus.  See Bragg v. Madison, 20 F. App'x 278, 285 (6th Cir. 2001); see

also Kush v. Rutledge, 460 U.S. 719, 726 (1983); Diva's Inc. v. City of Bangor, 411 F.3d 30, 38 (1st Cir. 2005).  Bayard has shown neither, and the § 1985 claims should be dismissed.

III. § 1983 Claims Relating to Criminal Case

Bayard has also cited 42 U.S.C. § 1983 as the cause of action for his federal claims.  That statute provides a right of action for violations of an individual's federally guaranteed rights by persons acting under color of state law.  See Sanchez v. Pereira-Castillo, 590 F.3d 31, 40-41 (1st Cir. 2009).

Bayard has asserted that his arrest and ensuing detention for trespassing violated his Fourth and Fourteenth Amendment right to be free from unreasonable searches and seizures, because the police lacked probable cause to arrest him, and knowingly relied on false information to justify his arrest and the instigation of his prosecution.  Bayard has further asserted that the private defendants violated his constitutional rights by submitting false information to the police to accomplish his arrest and prosecution, and for conspiring with government officials to that end.  Bayard further asserts that these actions by state and private actors resulted in his detention without an opportunity to post bail.

11

A.    Claims Arising out of Conviction

Bayard was convicted of trespassing in a house, in violation of RSA § 635:2, III(a), and that conviction was upheld by the NHSC.  The jury convicting him necessarily determined that he was not authorized to be in the house, and that he was aware that he lacked such authorization.  See RSA § 635:2, III(a).[4]  Federal law bars a plaintiff from maintaining a § 1983 claim, relating to prior state criminal proceedings, where a favorable judgment on that claim would necessarily imply that a state criminal conviction was invalid, unless the conviction has previously been voided through other official action.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (constitutional tort claim must be dismissed if judgment would necessarily state or imply that underlying convictions or sentences are invalid).

The Heck rule bars Bayard from proceeding on any claim that would require the court to find facts that would imply that the

_____

[4] RSA § 635:2 provides, in pertinent part:

> I.    A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place.
>
> . . . .
>
> III. Criminal trespass is a misdemeanor if:
>
> > (a) The trespass takes place in an occupied structure . . . .

trespassing conviction was not valid.  Accordingly, all of the claims in this action that directly or indirectly challenge the validity of Bayard's conviction must be dismissed as barred by the Heck rule.

### B.   Claims Related to Arrest

Bayard asserts that his arrest for trespass in violation of a writ of possession was not supported by probable cause, and was based instead on the officers' knowing use of false information.  A "warrantless arrest by a [police] officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  Probable cause must be grounded in "'reasonably trustworthy information,'" Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 370 (2009) (citation omitted), and the officers' subjective reason for making an arrest is generally irrelevant to the court's probable cause analysis.  See Devenpeck, 543 U.S. at 152; cf. United States v. Pontoo, 666 F.3d 20, 32 (1st Cir. 2011) (probable cause is "'common sense, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act'" (citation omitted)).

Prior to Bayard's arrest, the NLPD received a tip from a neighbor indicating that someone was in the house.  Officers called the Shovans, who responded that if it was Bayard, the police should arrest him because he knew he was not welcome. The arresting officers knew that Bayard had received a copy of the writ of possession on January 6, 2009, by which the probate court had ordered Bayard's eviction.  Putting all of those facts together, the arresting officers had reason to conclude at the time of the arrest, that Bayard was in the house knowing that he lacked any license or privilege to be there, in violation of RSA § 635:2, III(a).

Pointing to Officer Currier's stated reason for the arrest at the time he was booked, and Officer White's signature on the criminal complaint, both of which cited a different section of the criminal trespass law, Bayard contends that he was arrested for violating RSA § 635:2, III(b)(3) (regarding trespassing in violation of a restraining order), as to which the officers lacked probable cause, since a judge later ruled that the writ of possession was not a restraining order.  Moreover, Bayard asserts that the officers knew or should have known that the writ was not a restraining order, and that by relying on facts they knew were false, they violated his rights under the Fourth and Fourteenth Amendments.

The officers' subjective reasons for arresting Bayard and the initial charging decision do not control this court's resolution of whether the police had probable cause to arrest Bayard for a different type of criminal trespass. See Devenpeck, 543 U.S. at 153 (courts evaluating whether arrest was supported by probable cause can consider elements of crimes other than those specifically cited by arresting officers). Here, the facts known to the officers, as alleged in the complaint, are sufficient to establish that there was probable cause to arrest Bayard for knowingly entering the house without authorization to do so.

Bayard's claims challenging his warrantless arrest also involve an assertion that the private party defendants and the officers knowingly "submitted" false information leading to his arrest. There are no factual allegations in the complaint, however, that give rise to a plausible claim for relief based on any allegedly false information submitted to the police that would be actionable in this case under § 1983. The Heck rule, as explained above, bars Bayard from litigating in this case whether the Shovans lied when they said Bayard knew he was not welcome in the house, as Bayard's success on that claim would necessarily imply the invalidity of Bayard's trespassing conviction, and, as discussed above, the officer's reliance on

information regarding the writ being a restraining order does not render the arrest unsupported by probable cause, where there was probable cause to arrest for a different offense.  See Devenpeck, 543 U.S. at 153.

The complaint therefore fails to state a plausible claim for relief for any constitutional violation relating to the warrantless arrest that is actionable under § 1983 in this case. Accordingly, the court should dismiss the claims relating to the warrantless arrest.

C.  Bail

Bayard has alleged that Officer Currier, in conspiracy with Mark Shovan and Attorney Perkins, violated the Eighth Amendment by depriving Bayard of "an opportunity to post bail."  Bayard specifically asserts that following a video arraignment, bail was set at $500 cash, and that Bayard did not post bail because "his cash [had been] stolen," and the NLPD had seized his passport and other identifying papers, pursuant to a search warrant.  Bayard alleges that the seizure of his passport and other identification papers, and the retention of those items as exhibits in his federal criminal case, effectively rendered him "unable to survive" had he been released on bail.

The Eighth Amendment prohibits the imposition of excessive bail, see U.S. Const. amend. VIII, but does not guarantee a right to pretrial release.  See Stack v. Boyle, 342 U.S. 1, 4-5 (1951).  The limited right to bail has been described as including the right not to be deprived of the opportunity to post bond, after reasonable bail has been set.  See Hebert v. Maxwell, 2005 WL 2429174, 7 (W.D. La. Sept. 30, 2005) (jailer violated detainee's rights by holding detainee for 48 hours without notifying him that he could post bail, resulting in loss of opportunity to be released for that time period), aff'd and remanded on other grds., 214 F. App'x 451 (5th Cir. 2007).

Bayard's assertion that his "cash was stolen" or that his passport was seized as evidence, are insufficient to describe actions that prevented Bayard from posting bail that had been otherwise set in a reasonable amount.  Even if the defendants did engage in improper conduct as Bayard alleges, however, Bayard has failed to show that such conduct resulted in the setting of bail in an amount that was actually unreasonable or excessive relative to the state's legitimate interests.  See generally Galen v. Cnty. of Los Angeles, 477 F.3d 652, 660 (9th Cir. 2007).  Accordingly, the claim regarding defendants' interference with Bayard's bail should be dismissed.

D.   Malicious Prosecution

1.   Elements

Bayard asserts that defendants are liable to him under § 1983 for malicious prosecution.  To state a constitutional claim for malicious prosecution, a plaintiff prosecuted after a warrantless arrest must prove the elements of a malicious prosecution under the common law and also show a post-arraignment deprivation of liberty, pursuant to legal process, consistent with the concept of a Fourth Amendment seizure.[5]  See Moreno-Medina v. Toledo, 458 F. App'x 4, 7 (1st Cir. 2012).

> Generally speaking, in order to state a cause of action for malicious prosecution [under the common law], a claimant must allege: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice.

Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 n.5 (1st Cir. 1995) (emphasis in original); accord Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999).

---

[5]The First Circuit has expressed doubt regarding whether a malicious prosecution claim is ever actionable under § 1983. See, e.g., Moreno-Medina v. Toledo, 458 F. App'x 4, 7 (1st Cir. 2012).  This court declines to resolve the issue at this stage of the case, as the claim is otherwise subject to dismissal.

2.   <u>Favorable Termination</u>

To determine if the proceeding terminated favorably is a fact-specific inquiry:  "favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole." <u>Kossler v. Crisanti</u>, 564 F.3d 181, 188 (3d Cir. 2009) (en banc). "When the circumstances – both the offenses as stated in the statute and the underlying facts of the case – indicate that the judgment as a whole does not reflect the plaintiff's innocence, then the plaintiff fails to establish the favorable termination element."  <u>Id.</u>

Here, the alternative trespass charges were based on the same conduct:  Bayard's knowing unauthorized entry into the Shovan house on January 10, 2009.  Although the dismissed charge included an additional element (Bayard's knowing defiance of a restraining order), the charges at issue were pleaded in the alternative, joined for trial, and did not involve distinct incidents or conduct.  Moreover, the evidence relevant to the dismissed charge was "relevant and admissible to prove the elements of the remaining criminal trespass charge."  <u>State v. Bayard</u>, No. 2009-0631, slip op. at 1.  Considering all of the relevant circumstances, the court finds that the "judgment as a whole," including the jury's conviction of Bayard on the

alternative charge, neither reflected Bayard's "innocence," nor
constituted a favorable termination of the proceeding, for the
purposes of allowing Bayard's malicious prosecution claim to
proceed under § 1983.  See Kundratic v. Thomas, 407 F. App'x
625, 629 (3d Cir. 2011) (although assault charge decried as
"'bogus'" was ultimately dismissed, conviction on related
harassment charge precluded plaintiff from demonstrating that
proceeding "as a whole" terminated in his favor, thereby
warranting dismissal of § 1983 malicious prosecution claim).
Accordingly, the court should dismiss the federal malicious
prosecution claim asserted in the complaint.

    E.   Supervisors and Municipality

In the absence of any plausible claim for relief that any
subordinate officer or employee violated the plaintiff's federal
constitutional rights, all claims of supervisory or municipal
liability relating to the arrest, bail proceeding, and
conviction of Bayard should be dismissed from a case.  See
Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998)
(municipality cannot generally be held liable unless its agent
violated victim's constitutional rights).  Moreover, Bayard has
failed to plead facts sufficient to establish any supervisory or
municipal liability for an alleged failure to train employees,

as he has not alleged that the failure to train amounted to deliberate indifference to his individual rights. See Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (inadequacy of training may serve as basis for § 1983 liability only where failure to train amounts to deliberate indifference to rights of persons with whom untrained employees come into contact (citing City of Canton v. Harris, 489 U.S. 378, 388-89 (1989))). Accordingly, any § 1983 claim asserted against the Town, the County, and NLPD Chief Seastrand relating to Bayard's allegedly unconstitutional arrest and prosecution should be dismissed.

> F.   Private Parties and Conspiracy

Bayard has asserted that the private defendants, pursuant to § 1983, should be held liable for violating his constitutional rights.  The pertinent provisions of the Bill of Rights, however do not shield any individual from purely private misconduct.  See Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (Fourteenth Amendment "'erects no shield against merely private conduct, however discriminatory or wrongful'" (citation omitted)).  A private party can be deemed to be a state actor, potentially liable for violating the Fourteenth Amendment, only under limited circumstances.  See Alberto San, Inc. v. Consejo

de Titulares del Condominio San Alberto, 522 F.3d 1, 4 (1st Cir. 2008).

To the extent Bayard attempts to establish state action in this case by asserting that private parties engaged in a conspiracy with government officials, he must assert, as a predicate, "an actual deprivation of a right secured by the Constitution and laws" of the United States.  See Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006).  Private party defendants may not be held liable for a civil rights conspiracy, under § 1983, if the plaintiff has not shown that he has suffered any violation of his federal constitutional rights.  See id.  Here, Bayard has failed to show that his arrest or prosecution involved any violation of his federal rights, which is a necessary predicate of his § 1983 conspiracy claims.  Accordingly, the § 1983 claims against the private party defendants should be dismissed.

IV.  Strip Search Claims under § 1983

Bayard has asserted that Merrimack County is liable to him under 42 U.S.C. § 1983, for incidents in which MCHC correctional officers subjected him to strip searches and visual body cavity inspections.  Bayard asserts that because the searches were not based on any particular or individualized reason to suspect that

such a search would reveal contraband, they violated his Fourth and Fourteenth Amendment rights.

A.   Booking

1.   January 10, 2010

Bayard has specifically alleged that after his arrest on January 10, 2009, he was sent to MCHC pending his January 12, 2009, arraignment.  On that date, he was required to stand naked for about five minutes while the booking officer found clothes for him.  The booking officer also required him to turn around naked before giving him those clothes.

A jailor's interest in reducing risks to the prison population's health and security provide a reasonable basis for subjecting all detainees, including misdemeanants, to visual strip search inspections prior to admitting them to general prison population.  See Florence v. Bd. of Chosen Freeholders, 132 S. Ct. 1510, 1518-20 (2012).  Bayard's allegations regarding this inspection, conducted after his arrest and prior to his admission to the general population at MCHC, fail to state a plausible claim for relief.  Accordingly, the court should dismiss Bayard's Fourth and Fourteenth Amendment claim relating to the January 10 booking incident.

2.   August 6, 2010

Bayard has further alleged that on August 6, 2010, after the United States Marshal's Service transported him from MCHC to the federal court for an arraignment and back again for pretrial detention on the federal felony charges, MCHC officers subjected him to a strip search and visual body cavity inspection as part of the facility's rebooking procedure.  As previously stated, a search conducted pursuant to a jail's policy of subjecting pretrial detainees to visual body cavity inspections prior to admitting them to the general population, without consideration of individual circumstances, does not violate the detainee's constitutional rights.  See id. at 1522-23.  The Supreme Court, in Bell v. Wolfish, 441 U.S. 520, 560 (1979), also upheld the routine practice of subjecting pretrial detainees to reasonable, visual body cavity inspections after all contact visits.

Here, Bayard's transport to federal court, while perhaps not as likely to result in the smuggling of contraband as other situations that might be imagined, involved contacts that, nonetheless, implicate health and security concerns similar to those found to be reasonably related to legitimate interests in Florence and Bell.  This court should dismiss Bayard's claims relating to the August 6 search and visual inspection.

B.    Recurrent Searches and Inspections

The remaining thrice-monthly strip search and visual body cavity inspections described in the complaint did not occur in connection with any booking procedures, and there are no allegations suggesting that contact visits or any other precursor event, implicating health, safety, or security issues, triggered those inspections.  Bayard further asserts that the recurrent searches never recovered contraband, that they were not based on any individualized suspicion, and that his record, charges, and prior convictions did not involve violence, drugs, or weapons.

"[P]retrial detainees retain constitutional rights despite their incarceration, including basic Fourth Amendment rights against unreasonable searches and seizures."  Roberts v. Rhode Island, 239 F.3d 107, 109 (1st Cir. 2001) (citing Bell, 441 U.S. at 545).  Those rights, however, may be restricted by the fact of an inmate's confinement, and by institutional needs stemming from legitimate penological concerns.  See Roberts, 239 F.3d at 110.  In cases decided before Florence, the First Circuit applied the balancing test set forth in Bell to evaluate the reasonableness of a strip search in the prison context:  The court must balance "the need for the particular search against the invasion of personal rights that the search entails,"

considering "the scope of the particular intrusion, the manner
in which it is conducted, the justification for initiating it,
and the place in which it is conducted." Bell, 441 U.S. at 559.[6]
Applying that test, the First Circuit has found Fourth Amendment
violations when detainees, held in local jails for minor
offenses, were subjected to strip searches and visual body
cavity inspections, if the jailers lacked an individualized
suspicion for undertaking the search and inspection, while also
finding to be reasonable and consistent with the Fourth
Amendment such searches and inspections applied to dangerous
prison inmates escorted in and out of the maximum security area
of a prison.  See Savard v. Rhode Island, 338 F.3d 23, 29 (1st
Cir. 2003) (discussing cases) (opinion of equally divided en
banc court affirming summary judgment based on qualified
immunity); see also Oxley v. Penobscot County, 09-CV-21-B-W,
2010 WL 582222, *7-*10 (D. Me. Feb. 12, 2010) (discussing
cases), report and recommendation approved, 714 F. Supp. 2d 180,
187 (D. Me. 2010).

---

[6] The court declines at this preliminary stage of the case
to rule on whether Florence alters the standard for evaluating a
strip search and visual body cavity inspection occurring outside
of the initial booking process and admission to the general
population, at issue in Florence.  That issue is preserved for
resolution in this case after the defendant has had an
opportunity to be heard on the claim.

Bayard has alleged sufficient facts to show that the recurrent strip searches and visual body cavity inspections were not triggered by any individualized suspicion arising from the nature of the charges pending against him, his criminal history, or his disciplinary history, and that the searches were not restricted to the circumstances that legitimized the searches at issue in <u>Bell</u> and <u>Florence</u>.  While further elaboration of the facts in this case may show that the MCHC searches and inspections were reasonably related to legitimate safety or security interests, nothing in the complaint (doc. no. 1) allows the court to infer that the searches were thus justified.

Therefore, the court finds that Bayard has stated a plausible Fourth and Fourteenth Amendment claim for relief for approximately forty "routine" strip searches and visual body cavity inspections which were not conducted in response to contact visits, booking procedures, or any other individualized suspicion that Bayard was harboring contraband on his person. Those allegations state a plausible claim for relief under § 1983, and, as set forth in the order issued on this date, those claims may proceed against Merrimack County at this time. See <u>Young v. City of Providence ex rel. Napolitano</u>, 404 F.3d 4, 25 (1st Cir. 2005) (citation omitted) (municipality can be held liable under § 1983 "only when the governmental employees'

'execution of a government's policy or custom . . . inflicts the injury' and is 'the moving force' behind the constitutional violation"); Oxley, 2010 WL 582222, at 14 (finding trial-worthy issue of municipal liability for jailer's conduct in subjecting detainee to unreasonable strip search and body cavity inspection pursuant to county policy or custom).

V.    State Law Claims

The facts alleged in the complaint, as well as those susceptible of judicial notice, indicate that Bayard was domiciled in Pennsylvania, his place of incarceration, when he filed this action,[7] and that he has asserted a claim for damages exceeding $75,000.  This court, therefore, has diversity jurisdiction over Bayard's state law claims against the defendants, all of whom are citizens of a different state.  See 28 U.S.C. § 1332.  New Hampshire law governs Bayard's claims, as the incidents occurred in this state at a time when all of the parties resided in New Hampshire.  See Waterfield v. Meredith

---

[7]Domicile for diversity purposes is determined at the time the suit is filed.  See Hall v. Curran, 599 F.3d 70, 72 (1st Cir. 2010).  Although a prisoner's domicile is generally presumed to be the place he lived before he was incarcerated, that presumption may be rebutted, see id.  Documents filed in Bayard's federal criminal case concerning his plan to remain in Pennsylvania for the probationary portion of his sentence manifest Bayard's intent to make Pennsylvania his home upon his release from incarceration.  See, e.g., United States v. Bayard, No. 09-CR-0096-SM (D.N.H.) (doc. no. 148).

Corp., 161 N.H. 707, 712-13, 20 A.3d 865, 870-71 (2011); see
also Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 46 (1st Cir.
2009) ("federal court sitting in diversity applies the choice of
law rules of the forum state").

    A.   False Arrest, Imprisonment and Malicious Prosecution

For reasons set forth above as to Bayard's § 1983 false
arrest and malicious prosecution claims, Bayard has failed to
allege facts showing either that the criminal proceeding
terminated favorably to him, or that the officers lacked
probable cause or other authority to arrest him for trespassing
in the Shovan residence.  For those reasons, the tort claims of
false imprisonment, false arrest, and malicious prosecution all
fail and should be dismissed.  See Forgie-Buccioni v. Hannaford
Bros., Inc., 413 F.3d 175, 182 (1st Cir. 2005) (malicious
prosecution under New Hampshire law requires plaintiff to show
that criminal proceeding terminated in his favor); see also
MacKenzie v. Linehan, 158 N.H. 476, 482, 969 A.2d 385, 390
(2009) (essential element of false arrest or false imprisonment
is "absence of valid legal authority for the restraint
imposed").  Insofar as Bayard's state law civil conspiracy claim
is predicated on the assertion that he was falsely arrested,

falsely imprisoned, and/or maliciously prosecuted, the state law conspiracy claim should also be dismissed.

      B.   Abuse of Process

      Bayard claims that defendants engaged in an abuse of process during the arrest and trial proceedings against him.  A party claiming abuse of process must prove, among other things, that criminal processes were used "primarily to accomplish a purpose of which it is not designed," and that the plaintiff was harmed by the abuse of process.  See Long v. Long, 136 N.H. 25, 29, 611 A.2d 620, 623 (1992); see also Robinson v. Fimbel Door Co., 113 N.H. 348, 352, 306 A.2d 768, 771 (1973) (criminal process may not be used solely to achieve civil ends).  Given that there was probable cause for an arrest and that the proceedings resulted in a valid conviction, Bayard has failed to allege facts to show that the criminal proceedings were used "primarily" to achieve a purpose that the criminal trespass statute is not designed to accomplish, and for those reasons, the abuse of process claim should be dismissed.  Insofar as Bayard's state law civil conspiracy claim is predicated on the assertion that he was subjected to an abuse of criminal process, the state law conspiracy claim should also be dismissed.

### C.   Negligence and Gross Negligence

Bayard's claims of negligence and gross negligence are insufficiently alleged, in that Bayard has simply listed those terms without specifying how defendants violated any duty of care owed to him.  The claims of negligence and gross negligence should thus be dismissed.

### D.   Intentional Infliction of Emotional Distress

Bayard has asserted a claim for the intentional infliction of emotional distress, but has failed to assert sufficient, nonconclusory factual allegations showing that any defendant caused him to suffer such harm as a result of that defendant's extreme or outrageous conduct, for the purpose of stating a plausible claim for relief.  See Morancy v. Morancy, 134 N.H. 493, 496, 593 A.2d 1158, 1159 (1991) (listing elements of intentional infliction of emotional distress).  Accordingly, the court should dismiss Bayard's intentional infliction of emotional distress claim.

### Conclusion

All of the claims and defendants in this action should be dismissed, with the exception of the § 1983 claim asserting that Merrimack County is liable for MCHC's policy-driven recurrent strip searches and visible body cavity inspections of Bayard at

31

MCHC, undertaken outside of the context of contact visits and booking procedures.  That claim is the basis upon which the court has directed service of the complaint on Merrimack County.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

August 8, 2012

cc:  Serge Eric Bayard, pro se

LBM:nmd